IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No. 1:19-CR-102 |
| v. ) | |
| ) | The Honorable T.S. Ellis, III |
| PAUL JOSEPH WILSON, ) | |
| ) | Sentencing: July 12, 2019 |
| *Defendant*. ) | |
| ) | |

## UNITED STATES' POSITION ON SENTENCING

The defendant, Paul Wilson, downloaded child pornography in his home. In this respect, he was no different than the ordinary offender. In another respect, however, Wilson was very different: when he downloaded child pornography in 2013, his home was a dormitory at a school in Washington, D.C., where he lived alongside minor students.

Wilson eventually moved to Virginia, and he took both his child pornography files and his interest in child pornography across state lines with him. After his move, Wilson continued to consume child pornography, but the seriousness of his conduct escalated. While he had previously consumed content depicting naked children posing suggestively and exhibiting their genitals, he moved on to consuming hardcore content depicting the penetrative rape of prepubescent children by adults. And he progressed to accessing and downloading child pornography over the dark web, which cloaked his offenses in anonymity. He did so until the FBI, which had developed technologically sophisticated techniques of its own, identified Wilson and the extent of his crimes.

The seriousness of Wilson's offense conduct, combined with the need for general and specific deterrence and to promote respect for the law, warrant a significant sentence. The United States recommends that the Court sentence Mr. Wilson to 97 months in prison, which

1

represents the low end of the Guidelines range, followed by ten years of supervised release.

I.     **BACKGROUND**

    A.     **Wilson Downloads Child Pornography While Living On Campus at a School in Washington, D.C., and Later Transports it to Virginia**

In 2013, Paul Wilson worked at a school in Washington, D.C., and he lived in a dormitory on campus. Presentence Investigation Report ("PSR") ¶ 20, Dkt. No. 32, July 3, 2019. The student body at the school consisted of boys between 4th and 12th grade. According to one of Wilson's former coworkers, between 8 and 30 students resided in the dormitory on any given night, and Wilson was allowed to move into the dormitory as a "Dorm Master" as a form of in-kind payment.

While residing in the school dormitory, Wilson subscribed to a number of newsgroups online. Newsgroups are internet-based news and information services to which users can subscribe and then receive articles or postings that are specific to a particular subject matter. PSR ¶ 20. Newsgroups cover a variety of subject matters, but Wilson subscribed to newsgroups focused on child pornography and child erotica. *Id.* ¶ 21.

In April 2013, and then again in August 2013, Wilson downloaded files through his newsgroups subscriptions that could be decoded into images containing child pornography, including images from the "LS Models" and "Branded Dolls" series that depict young girls between approximately 8 and 10 years old spreading their legs and exposing their naked genitals. Wilson saved these files on his desktop computer. PSR ¶ 21.

In 2014, Wilson moved from the school dormitory in Washington, D.C., to an apartment in Annandale, Virginia. PSR ¶ 22. In so doing, he caused his desktop computer—which contained child pornography—to be transported across state lines. *Id.*

### B. Wilson Continues to Access and Consume Child Pornography, This Time Over the Dark Web

Wilson's involvement with child pornography did not stop after his move to Virginia. In fact, it became more serious. For one, he began consuming child pornography over the "dark web," a network of computers that allows anonymous communications over the internet. Specifically, in September 2014, he registered an account with the website "Playpen," which was a website that operated over the Tor network and was dedicated to the advertisement and distribution of child pornography. PSR ¶¶ 13, 23. On several occasions between September 2014 and March 2015, Wilson logged onto Playpen and accessed pages displaying or advertising child pornography. *Id.* ¶ 23.a-b.

In addition, Wilson appears to have begun consuming harder child pornography in 2014 and 2015. The child pornography he downloaded and consumed while living in D.C. depicted mostly children posing sexually and lasciviously exhibiting their naked genitals. *See* PSR ¶ 21.a-b. In contrast, by the time he became a member of Playpen, Wilson had progressed to consuming hardcore child pornography that depicted adult men engaged in oral and vaginal sex with prepubescent girls. *Id.* ¶ 23.a-b.

### C. Law Enforcement Identifies Wilson and Uncovers the Extent of His Offenses

Unbeknownst to Wilson, however, Playpen was under investigation by the FBI. Although Playpen operated over the dark web—which generally provides its users with a shroud of anonymity—the FBI developed and deployed a technique to identify Playpen users. PSR ¶ 14. Wilson was one of the users that the FBI's technique identified. *Id.* ¶¶ 15-16.

In July 2015, FBI agents executed a search warrant at Wilson's apartment in Annandale and seized electronic devices. PSR ¶ 24. Wilson was not present when agents arrived. Instead, FBI agents located Wilson on campus at the school in Washington, D.C., where he still worked.

Wilson agreed to speak to FBI agents and, after asking agents to conduct the interview in the school's chapel, he admitted to downloading and viewing child pornography, including through various websites on the dark web. *Id.* ¶ 25. Wilson also admitted that he is sexually attracted to minor girls but has not acted on his urges. At the time of the interview, Wilson had already provided the school with two weeks' notice that he would be leaving his position. According to school officials, Wilson was terminated on the date of the interview and was not permitted to return to the school.

The forensic examination of Wilson's devices proved unusually difficult. Wilson was an information technology specialist at the school, and his devices were technically sophisticated and posed a number forensic obstacles. For example, his principal computer used the non-standard Linux operating system and an array of hard drives needed to be painstakingly reconstructed by a forensic examiner.

Law enforcement ultimately uncovered significant evidence of child pornography crimes on Wilson's devices, including thousands of thumbnail images of child pornography and evidence that he had downloaded child pornography while he still lived on campus at the school. PSR ¶ 24.

D. **Wilson is Charged and Pleads Guilty**

Not long after leaving the school, Wilson moved to a remote cabin in rural West Virginia. In 2018, the United States charged him by criminal complaint with interstate transportation of child pornography in violation of 18 U.S.C. §§ 2252(a)(1) and (b)(1) and 2. PSR ¶ 1. The FBI and West Virginia State Police attempted to execute an arrest warrant at his home, only to find that he was not there and did not appear to have been there for some time.

Wilson was ultimately arrested in West Virginia in December 2018 and transported to the Eastern District of Virginia for trial. PSR ¶ 1. In April 2019, he pleaded guilty pre-indictment to

interstate transportation of child pornography. *Id.* ¶ 2. In connection with his plea, Wilson admitted to his conduct on Playpen as well as to downloading child pornography while residing at the school in Washington, D.C. In exchange, the United States Attorney's Offices for both the Eastern District of Virginia and the District of Columbia agreed not to prosecute him further for such conduct. *Id.* ¶ 10.

## II. APPLICABLE GUIDELINES RANGE

The PSR correctly calculates Wilson's Guidelines range at 97-121 months. In particular, the PSR recommends that the following sentencing provisions be applied:

| Guideline | Offense Level |
|---|---|
| Base Offense Level for transportation of child pornography (U.S.S.G. § 2G2.2(a)(2))); | 22 |
| Reduction for lack of intent to distribute child pornography (*id.* § 2G2.2 (b)(1)); | -2 |
| Enhancement for material depicting a prepubescent minor or a minor under the age of 12 (*id.* § 2G2.2(b)(2)); | +2 |
| Enhancement for involvement with material that portrays sadistic conduct (*id.* § 2G2.2(b)(4)); | +4 |
| Enhancement for use of a computer to receive child pornography (*id.* § 2G2.2(b)(6)); | +2 |
| Enhancement for an offense involving more than 600 images (*id.* § 2G2.2(b)(7)(D)); | +5 |
| Reduction for demonstration of acceptance of responsibility (*id.* § 3E1.1(a)); | -2 |
| Reduction for timely notification of intent to plead guilty (*id.* § 3E1.1(b)).[1] | -1 |
| **TOTAL** | **30** |

PSR ¶¶ 40-53. Although Wilson's plea agreement does not require him to agree to the sadistic-conduct enhancement, the PSR properly applies it because Wilson accessed child pornography

---

[1] If the Court determines that Wilson has accepted responsibility and is entitled to a 2-level reduction under U.S.S.G. § 3E1.1(a), the United States moves to adjust his offense level downward by one level pursuant to § 3E1.1(b) for timely notifying the Government of his intention to plead guilty.

over Playpen that depicts adult men orally and vaginally penetrating prepubescent girls. *See, e.g., United States v. Johnson*, 680 F. App'x 194, 197-99 (4th Cir. 2017) ("Where pornography images portray the sexual penetration of prepubescent children, courts consistently find the images 'inherently sadistic' because they depict sexual acts that are 'likely to cause pain in one so young.'") (quoting *United States v. Corp*, 668 F.3d 379, 390 (6th Cir. 2012)).

The United States does not contest that Wilson's Criminal History Category is I. PSR ¶¶ 54-56.

### III. THE SENTENCING FACTORS UNDER 18 U.S.C. § 3553(a) COUNSEL IN FAVOR OF A SENTENCE AT THE LOW END OF THE GUIDELINES RANGE

The factors in 18 U.S.C. § 3553(a) support a total sentence of at the low end of the Guidelines range.

#### A. Wilson's Conduct was More Aggravated Than That of the Ordinary Child Pornography Offender

The nature and circumstances of Wilson's crimes are more aggravated than those of the average child pornography offender. This is true for at least two reasons.

First, when Wilson downloaded child pornography in 2013, he did not just work at a school; he downloaded child pornography from a school dormitory where he lived alongside minor students. Although the investigation did not uncover evidence that Wilson has engaged in hands-on sexual assault of any children, his decision to seek employment at a school for children and to download child pornography while living among minor students was, at the least, deeply concerning and exceedingly reckless, and it demonstrates that he poses a risk of danger to the community.

Second, Wilson was a technologically sophisticated offender who used technology—*i.e.*, the Tor browser and the dark web—that made his crimes particularly difficult to detect and

6

investigate. The hallmark of the dark web is anonymity. Predictably, many people use the dark web for illegal activity, including by trafficking in images and videos depicting the rape and abuse of children. When they do so, they often commit their crimes in full view of law enforcement, but the nature of the dark web makes them difficult to identify and apprehend. As the Fourth Circuit observed, initially "the FBI was unable to locate Playpen users, because by virtue of their use of Tor, the users uploading and downloading pornography remained anonymous." *United States v. McLamb*, 880 F.3d 685, 688 (4th Cir. 2018). Not all Playpen's members and users were identified by the FBI. Under different circumstances, Wilson may have remained undetected altogether.

Overall, Wilson's offense conduct warrants a greater sentence than that of a defendant who did *not* commit his crimes while living in a school dormitory alongside minor students and did *not* use sophisticated technology to try to remain anonymous while consuming child pornography online.

### B. Wilson's Crimes Were Not Victimless

Unfortunately, non-production child pornography offenses are commonly perceived as victimless crimes because the children depicted in the images have already been abused. This perception is flatly wrong. As the Supreme Court has recognized, "[t]he distribution of photographs and films depicting sexual activity by juveniles is intrinsically related to the sexual abuse of children…" *New York v. Ferber*, 458 U.S. 747, 759 (1982). This is so for at least two reasons.

First, consumption of child pornography—including receipt and possession offenses—re-victimizes the children whose sexual abuse is depicted in the material. *See, e.g., Paroline v. United States*, 134 S.Ct. 1710, 1716-17 (2014) ("[t]he harms caused by child pornography ... are still more extensive because child pornography is 'a permanent record' of the depicted child's

7

abuse, and 'the harm to the child is exacerbated by its circulation'") (quoting *Ferber*, 458 U.S. at 759). It is, to say the least, highly traumatic for a child to suffer sexual abuse at the hands of an adult. But many victims of child pornography crimes suffer even more. Not only were they traumatized by the initial sexual abuse that was captured on film, they endure further victimization through the ongoing traffic and consumption of images depicting that abuse. These victims also live every day with the knowledge that this cycle of re-victimization may never end. Once images are distributed over the internet, it is unlikely that they will ever be fully recovered.

Second, "[t]he demand for child pornography harms children in part because it drives production, which involves child abuse." *Paroline*, 134 S.Ct. at 1716 (2014); *see also Ferber*, 458 U.S. at 759-60 ("[T]he distribution network for child pornography must be closed if the production of materials which requires the sexual exploitation of children is to be effectively controlled."). Each image and video that Wilson downloaded or consumed was part of a supply chain that began with the sexual exploitation of a child. And the demand for child pornography drives production even in the absence of financial incentives. Innumerable images and videos depicting child rape and abuse are already available on the internet. Nevertheless, as the Court well knows, more such content continues to be produced and distributed nearly every day.

        C.        **The Court Should Craft a Sentence to Deter Other Offenders Who Use Sophisticated Technology to Mask Their Identities and Crimes**

General deterrence is paramount in a case like this. By using the Tor network, Wilson plainly thought that law enforcement would never be able to identify and apprehend him. He was wrong, but only because of the specific circumstances of the Playpen investigation. Other offenders who go to the same lengths to mask their identities may well be successful in escaping detection and prosecution.

Offenders who traffic in child pornography over the dark web are often brazen. When it

8

was active, Playpen operated in full view of law enforcement. Other child pornography websites on the dark web still do. Users of these websites upload and download videos of child sexual abuse and even discuss the sexual exploitation of children openly, all in the belief that the Tor network will shield their identities. These circumstances present law enforcement with what one court accurately described as "the daunting task of apprehending tens of thousands of individuals engaged in perverse crimes but cloaked in anonymity through their use of Tor…" *United States v. Kienast*, 907 F.3d 522, 529 (7th Cir. 2018). There is little sign that child pornography trafficking on the dark web is abating. Although law enforcement has had some successes in the past, there is no guarantee that it will be able to keep up with anonymizing technology at the same pace as child pornography offenders.

The Court should thus craft a sentence sufficient to deter others from joining the thousands of criminals who believe that the anonymity of the dark web will prevent them from being identified and prosecuted.

    **D.**    **Comparable Cases Support the United States' Recommendation**

Offenders who access and download child pornography over the dark web often receive significant sentences. The following examples are all from roughly the past year and a half:

- In December 2017, Judge Bunning of the Eastern District of Kentucky sentenced Craig Anderson to **87 months** in prison for receipt of child pornography. According to Anderson's plea agreement, he accessed and downloaded child pornography over the Tor network, and a forensic examination of his computer revealed more than 500 images of child pornography. *See United States v. Anderson*, Dkt. Nos. 39, 49, No. 7:16-cr-10 (E.D. Ky.).

- In February 2018, Judge Suddaby of the Northern District of New York sentenced Michael Caraher to **90 months** in prison for receipt, distribution, and possession of child pornography. According to Caraher's plea agreement, he accessed Playpen over the Tor network and downloaded videos depicting the sexual abuse of children. He also traded child pornography with others over the internet. *See United States v. Caraher*, Dkt. Nos. 64, 80, 5:16-cr-244 (N.D.N.Y.).

- In April 2018, Judge Jackson of the District of Colorado sentenced Andrew Workman

9

- to **97 months** in prison for receipt of child pornography. According to Workman's statement of facts, he accessed a child pornography website on the dark web and also downloaded child pornography through the internet. A search of his devices revealed more than 1,300 images and videos of child pornography. *See United States v. Workman*, Dkt. Nos. 79, 101, No. 1:15-cr-397 (D. Colo.).

- In August 2018, Judge Reidinger of the Western District of North Carolina sentenced Carl Jack Hall to **108 months** in prison after a jury found him guilty of receiving and possessing child pornography. According to information that the United States gave the court in that case, Hall accessed and downloaded child pornography from Playpen and his computer contained several hundred child pornography images in unallocated space. *See United States v. Hall*, Dkt. Nos. 48, 72, No. 1:16-cr-147 (W.D.N.C.).

- In November 2018, Judge Miller of the Northern District of Indiana sentenced Blake Robison to **91 months** in prison for transporting child pornography. According to Judge Miller's sentencing findings, Robison "had begun to acquire [child pornography] on the dark web, ***which sets him apart from most defendants***…" *See United States v. Robison*, Dkt. Nos. 41 at 6, 42 at 1, No. 3:18-cr-43 (N.D. Ind.) (emphasis added). Judge Miller also noted that Robison's request for the minimum sentence "is simply too short to reflect … his turn to the dark web in search of still more child pornography…" *Id.*, Dkt. No. 41 at 7.

- In December 2018, Judge Rose of the Southern District of Iowa sentenced Steven Horton to **84 months** of imprisonment after he pleaded guilty to accessing child pornography with intent to view it. According to information that the United States gave the court in that case, Horton had accessed the Playpen website and repeatedly accessed postings containing child pornography. *See United States v. Horton*, Dkt. Nos. 3, 100, 105, No. 1:15-cr-51 (S.D. Iowa).

In contrast to Wilson, none of these individuals downloaded child pornography from a school.

Even if the Court were to depart downward from the 97-month low end of the Guidelines range, a substantial departure would not be justified. *See, e.g., United States v. Zuk*, 874 F.3d 398, 409 (4th Cir. 2017) ("a major departure from the advisory [Guidelines] range 'should be supported by a more significant justification than a minor one'") (quoting *United States v. Morace*, 594 F.3d 340, 346 (4th Cir. 2010)) (brackets omitted). According to data from the U.S. Sentencing Commission, in fiscal year 2018 child pornography offenders in Criminal

History Category I received a mean sentence of 88 months and a median sentence of 77 months.[2] This category excludes "cases involving the production of child pornography" but it includes offenders convicted of possession of child pornography, which carries no mandatory minimum sentence.[3] This figure also takes into account that a large majority of child pornography offenders received sentences outside the guidelines range.[4]

As explained above, Wilson's offenses were more aggravated than the mean or median offender in Criminal History Category I, and the Court's sentence should reflect this.

### E.  A Ten-Year Period of Supervised Release is Appropriate

Again, Wilson's conduct was more aggravated than that of the ordinary offender. This suggests that he poses a greater danger to the community than the ordinary offender and thus requires a greater-than-ordinary level of supervision when he is released from prison. The United States therefore recommends that the Court impose ten years of supervised release to follow Wilson's prison sentence.

//

//

//

//

//

---

[2] *See* U.S. Sentencing Commission, *2018 Annual Report and Sourcebook of Federal Sentencing Statistics* at Table 27 (2019), available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2018/Table27.pdf (last visited July 5, 2019).

[3] *Id.* at 29, available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2018/2018-Annual-Report-and-Sourcebook.pdf (last visited July 5, 2019).

[4] *Id.* at Table 31 (in fiscal year 2018, 28.5% of child pornography offenders received a sentence within the Guidelines range), available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2018/Table31.pdf (last visited July 5, 2019).

## IV.     CONCLUSION

For these reasons, the United States respectfully requests that the Court impose a sentence of 97 months, followed by ten years of supervised release.

Respectfully Submitted,

G. Zachary Terwilliger
United States Attorney

By:     /s/
Kyle P. Reynolds
Special Assistant United States Attorney (LT)
Nathaniel Smith, III
Assistant United States Attorney

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 5, 2019, I will file the foregoing position paper with the Clerk of Court using the CM/ECF system, which will send an electronic copy to all counsel of record, including:

Brooke Sealy Rupert, Esq.
Office of the Federal Public Defender
1650 King Street, Suite 500
Alexandria, VA 22314
Tel: (703) 600-0800
Fax: (703) 600-0880

In addition, I hereby certify that on July 5, 2019, I will email a copy of the foregoing position paper of the United States to the U.S. Probation Officer assigned to this matter:

Rachel E. Meyer
U.S. Probation Officer
Alexandria, Virginia
Rachael_Meyer @vaep.uscourts.gov

By: /s/
Kyle P. Reynolds
Special Assistant United States Attorney (LT)